# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| HUGH GERALD DELAUGHDER, JR. and PATSU ANN WHATLEY, Individually and as Administratrix of the Estate of BILL MONROE WHATLEY, deceased, | : : : : : : : : : : : : : : : : : |
| Plaintiffs, | |
| v. | CIVIL ACTION NO. 1:18-cv-04414-RWS |
| COLONIAL PIPELINE COMPANY and SUPERIOR LAND DESIGNS, LLC, | |
| Defendants. | |

## **ORDER**

This case comes before the Court on Plaintiff's Emergency Motion to Remand [17]. Also pending on the docket are Plaintiff's Motion for Order to Release 911 Recordings [46]; Defendant Colonial Pipeline's Motion to Stay Discovery [56]; and Colonial's Motion for Oral Argument [60]. After reviewing the record, the Court enters the following Order commensurate with its ruling at the scheduling conference on December 11, 2018.

## Background

Plaintiffs first brought this action on July 9, 2018 in Fulton County State Court, alleging Defendants' failure to follow protocol resulted in an explosion that killed Plaintiff Mill Monroe Whatley and injured Plaintiff Hugh Gerald Delaughder, Jr.  On July 12, 2018, before service, Colonial removed the case to this Court on the basis of diversity.[1]  Plaintiffs timely moved to remand or alternatively to dismiss without prejudice.  The Court granted Plaintiffs' Motion to Dismiss without Prejudice and denied the Motion to Remand as moot on September 19, 2018.

On September 20, 2018, Plaintiffs refiled in Fulton County State Court. On the same day, before service, Colonial again removed to this Court.  The following timeline of events is undisputed:

| | | |
|---|---|---|
| 9/19/2018 | 12:28 p.m. | Colonial changed its registered agent from Corporation Service Company ("CSC") to Northwest Registered Agent, LLC ("Northwest") |
| 9/20/2018 | 11:50 a.m. | Plaintiffs filed their Complaint in Fulton County State Court. |

---

[1] This Court has diversity jurisdiction.  Plaintiffs are citizens of Alabama and Mississippi, Defendant Colonial is a citizen of Delaware and Georgia,  Defendant Superior Land Designs, LLC ("Superior) is a citizen of Georgia, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

| | | |
|---|---|---|
| | 12:26 p.m. | Plaintiffs attempted service on CSC, Colonial's former registered agent. |
| | 1:15 p.m. | Colonial filed its Notice of Removal in this Court. |
| | 1:24 p.m. | Colonial filed its Notice of Filing Notice of Removal in Fulton County State Court. |
| | 1:35 p.m. | Superior filed its joinder in the removal. |
| | 1:38 p.m. | Plaintiffs served Superior. |
| 10/10/2018 | | Plaintiffs attempted service on Northwest, Colonial's current registered agent. |
| 10/30/2018 | | Plaintiffs served Colonial |

(Pls.'s Emergency Mot. to Remand, Dkt. [17-1] at 3-5; Def. Colonial's Resp., Dkt. [39] at 5.) Thus, at the time of removal, no forum defendant was properly served.

On October 16, 2018, Plaintiff Delaughder filed his Emergency Motion to Remand [17], arguing removal was procedurally improper under 28 U.S.C. § 1441, also known as the "forum-defendant rule." In response, Colonial maintained removal was proper under the plain language of the statute, and alternatively asserted federal question jurisdiction. At a scheduling conference on December 11, 2018, the Court **GRANTED** Plaintiff's motion. As such,

3

Colonial's Motion for Oral Argument [60] on Plaintiffs' motion [17] is **DENIED** as moot. The Court will now memorialize its prior ruling in written order.

## Discussion

### I. Removal Legal Standard

Unless Congress explicitly provides otherwise, a defendant may remove to federal court a civil action brought in state court, provided that the federal court has original jurisdiction over the action. 28 U.S.C. § 1441(a)-(b). Original jurisdiction may be based on either the presence of a federal question or diversity of citizenship of the parties. 28 U.S.C. §§ 1331, 1332.

Nevertheless, due to federalism and finality concerns, removal statutes should be construed narrowly with any doubt resolved in favor of remand. Allen v. Christenberry, 327 F.3d 1290, 1293 (11th Cir. 2003); Diaz v. Sheppard, 85 F.3d 1502, 1505 (11th Cir. 1996); see also Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994) ("Defendant's right to remove and plaintiff's right to choose his forum are not on equal footing; . . . removal statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand."). The party seeking

removal bears the burden of establishing federal jurisdiction. Friedman v. New York Life Ins. Co, 410 F.3d 1350, 1353 (11th Cir. 2005).

**II. Federal Question Jurisdiction**

As an initial matter, the Court does not have federal question jurisdiction over this case. Although Colonial went to great lengths to avoid the forum-defendant rule, it argues that jurisdiction is proper regardless of the rule because "certain claims asserted by Plaintiffs raise a federal question under regulations promulgated by the Pipeline and Hazardous Materials Safety Administration codified at 49 C.F.R. § 195." (Def. Notice of Removal, Dkt. [1], at 2.) Plaintiffs maintain that federal question jurisdiction is improper because their complaint includes only state law claims, and federal law is not essential to any of those claims. The Court agrees.

The determination of whether federal question jurisdiction exists "is governed by the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Behlen v. Merrill Lynch, 311 F.3d 1087, 1090 (11th Cir.2002) (quoting Caterpillar Inc. v. Williams, 482 U.S. 386 (1987)). Under this rule, federal question jurisdiction clearly lies in cases

5

where federal law creates the cause of action asserted in the complaint. Merrell Dow Pharma., Inc. v. Thompson, 478 U.S. 804, 808 (1986). Federal question jurisdiction may also lie in cases where state law creates the cause of action, provided resolution of the state law claim requires resolution of a substantial federal law issue. See id. at 809 ("We have, however, also noted that a case may arise under federal law where the vindication of a right under state law necessarily turned on some construction of federal law.") (internal quotes and citation omitted); Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 13 (1983) ("Even though state law creates [the] causes of action, [the] case may still 'arise under' the laws of the United States if a well-pleaded complaint established that [the] right to relief under state law *requires resolution of a substantial question of federal law* in dispute between the parties.") (emphasis added).

Plaintiffs' Second Amended Complaint [38] contains only state law claims against Defendants for their alleged fault in a pipeline explosion that happened in Alabama.[2] Accordingly, federal question jurisdiction lies only if a

---

[2] Specifically, Plaintiffs' bring the following claims against one or both Defendants: Negligence against Colonial (Count I); Wantonness against Colonial (Count II); Negligence Per Se against Colonial (Count III); Negligence against

6

substantial question of federal law is a necessary element of one of these causes of action. Franchise Tax Bd., 463 U.S. at 13 ("[T]he 'law that creates the cause of action' is state law, and original federal jurisdiction is unavailable unless it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims ....").

Colonial argues that this standard is satisfied. Although Colonial claims Plaintiffs "invoke federal law, rules, or regulations" at least twenty-six times, they focus on Plaintiffs' negligence per se claims. (Colonial's Resp. to Pls.' Mot. to Remand, Dtk. [39] at 20, 21-26.) According to Colonial, adjudication of those claims requires the interpretation of various Pipeline and Hazardous Materials Safety Administration ("PHMSA") federal regulations.

Plaintiffs' negligence per se claim does invoke the PHMSA, however, the Court agrees with Plaintiffs that application of the PHMSA here does not give rise to a federal question such that exercise of federal question jurisdiction would be proper. This is for two primary reasons. First, Plaintiffs' claim does not require judicial interpretation of the federal statute, and second Plaintiffs'

---

Superior (Count IV); Wantonness against Superior (Count V); Respondeat Superior (Count VI); Wrongful Death (Count VII); Punitive Damages (Count VIII); and Loss of Consortium (Count IX).

7

negligence per se claim is an alternative theory of liability for ordinary negligence. Here, the state court need only assess whether Defendants violated the well-established regulations; which, as Plaintiffs point out, is entirely "fact-bound and situation-specific" and does not trigger federal question jurisdiction. See Adventure Outdoors, Inc. v. Bloomberg, 552 F. 3d 1290, 1299 (2008). Further, as this Court held in Stephens Cty. v. Wilbros, LLC, 2:12-CV-0201-RWS, 2012 WL 4888425, at *3 (N.D. Ga. Oct. 6, 2012) even if Plaintiffs' negligence per se claim were predicated on resolution of a federal issue, Defendants' potential negligence liability is not. Thus, Colonial cannot claim that resolution of Plaintiffs' claims depends on resolution of a substantial federal issue.

In sum, Defendants, as the removing party, bear the burden of establishing federal jurisdiction and overcoming the preference towards remand. The Court perceives no federal question that exists on the face of Plaintiff's Complaint. This is a case primarily concerning Alabama state law. Plaintiffs' allegations concerning violation of a federal statute in a negligence per se claim asserted as an alternative means for establishing negligence is not an essential element of a claim and therefore is not enough to support federal

8

question jurisdiction.

Without federal question jurisdiction, Defendants must overcome the forum-defendant rule to remain in federal court on diversity jurisdiction. The Court will now address the issue of snap removal and the procedural appropriateness of it as applied to these facts.

## III. Snap Removal

Colonial removed this case using a controversial tactic called "snap removal." Generally, defendants may remove an action on the basis of diversity of citizenship if there is complete diversity between all named plaintiffs and all named defendants, and no defendant is a citizen of the forum state. 28 U.S.C. § 1441. The latter limitation, also known as the "forum-defendant rule," is a major removal restraint. The rule reads as follows:

> A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest *properly joined and served* as defendants is a citizen of the State in which such action is brought.

§ 1441(b)(2) (emphasis added). Forum defendants looking to remove point to the "properly joined and served" language in the statute and argue that a forum

9

defendant can remove on the basis of diversity if removed before service of the complaint.

Now referred to as snap removals, this litigation tactic has become increasingly popular in recent years due in part to the increased ease of electronic docket monitoring. District courts are in disagreement over snap removals, and only the Third Circuit has definitively come down on one side of the issue.[3] Encompass Ins. Co. v. Stone Mansion Rest. Inc., 902 F.3d 147 (3rd Cir. Aug. 22, 2018) (finding snap removals permissible under § 1441(b)(2)'s plain text). Thus, there is no binding Eleventh Circuit authority on snap removals. This Circuit and district courts in this Circuit have, however, addressed snap removal on occasion, providing helpful guidance. Goodwin v. Reynolds, 757 F.3d 1216 (11th Cir.2014); Francis v. Great W. Cas. Co., 5:17-CV-432 (MTT), 2018 WL 999679, at *1 (M.D. Ga. Feb. 21, 2018); Wolfe v. Schindler Elevator Corp., 8:14-CV-2448-T-24, 2014 WL 6470698, at *3 (M.D. Fla. Nov. 17, 2014); Hawkins v. Cottrell, Inc., 785 F. Supp. 2d 1361, 1370 (N.D. Ga. 2011).

---

[3] See Breitweiser v. Chesapeake Energy Corp., 3:15-CV-2043-B, 2015 WL 6322625, at *3 (N.D. Tex. Oct. 20, 2015) for an overview of district court cases supporting both sides of the split.

10

First, in Hawkins, the court carved out a third approach to snap removals, allowing them but only if at least one defendant has been properly joined and served. 785 F. Supp. 2d at 1370. The decision rested on the plain language of a now revised version of § 1441(b). Id. At that time, the statute read: "Any other such action shall be removable only if *none* of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. 28 § 1441(b) (2002)(emphasis added). The court reasoned the word "none" implied that at least one defendant must be properly joined and served before removal, "otherwise, it makes no sense to examine whether 'none' of the parties" is a forum defendant. Id. at 1369. In 2011, Congress replaced "none" with "any," effectively eliminating a statutory argument for the third approach. 28 U.S.C. § 1441(b) (2011). That said, while the court couched its decision on the plain meaning of the statute at that time, it also found that allowing snap removals would create absurd results. Hawkins, 785 F. Supp. 2d at 1371-4.

Next, in Goodwin, the Eleventh Circuit reviewed a district court's decision to grant a plaintiff's motion to dismiss without prejudice after a defendant snap removed. 757 F.3d at 1219. Nonetheless, the court did address

11

snap removal at length, if only in dicta. Id. at 1221. Looking to the purpose of the forum-defendant rule at large and the "properly joined and served" specific language, the court concluded that "[b]ecause the likely purpose of this language is to prevent gamesmanship by plaintiffs. . . we cannot believe that it constrains the district court's discretion under Rule 41(a)(2) to undo Defendants' gamesmanship in the circumstances at bar." Id.

Subsequently, in Wolfe, a district court in the Middle District of Florida, Tampa Division, relied heavily on Goodwin to again dismiss a case without prejudice after a defendant snap removed. 2014 WL 6470698, at *3. Like in Goodwin, though snap removal was not a dispositive issue before the court, the court expressed distaste towards snap removal to support its dismissal of the case, giving plaintiffs another chance to serve forum defendants in state court before removal. In doing so, the court noted that the purpose of the forum-defendant rule is to "prevent gamesmanship by plaintiffs—to prevent plaintiffs from blocking removal by joining a forum defendant against whom the plaintiff does not intend to proceed against." Id. (citing Goodwin, 757 F.3d at 1221).

Finally, there are district court cases in this Circuit following the plain language approach. Francis, 2018 WL 999679, at *2; Gibson v. Wal-Mart

12

Stores East, LP, 2010 WL 419393, at *2-4 (M.D. Ga. 2010). For example, in Francis, the Middle District of Georgia found that under the plain language of the statute, an unserved forum-defendant properly removed. 2018 WL 999679, at *1. Notably, in this line of decisions, non-resident defendants had been properly joined and served at the time of removal. While the courts reasoned that snap removals were permissible under the statute, the facts before them evidenced less gamesmanship than the above-referenced cases or the one currently before the Court.

Thus, although the Court is not bound by any prior decision, circuit precedent supports the remand approach to snap removals, based largely on an anti-gamesmanship rationale. One explanation for the uncertainty here is that orders granting or denying motions to remand are not immediately appealable. 28 U.S.C. § 1447(d). Thus, despite little guidance from the circuit court, the Court must still decide if snap removal is proper on these facts, which demonstrate clear gamesmanship by Colonial.

Applying a similar analytical framework as the cases discussed above, the Court will now consider both parties' arguments concerning the statutory construction of § 1441(b). And as with all statutory analysis, the Court begins

13

with the plain language of the statute.

A. Plain Language

The Court's inquiry is initially limited to determining a statute's plain meaning. If the plain meaning is clear, the Court is bound to give effect to its language unless one of two circumstances apply: "(1) the statute's language is ambiguous; or (2) applying the statute's plain meaning would lead to an absurd result." Hawkins v. Cottrell, Inc., 785 F. Supp. 2d 1361, 1366 (N.D. Ga. 2011) (citing United States v. DBB, Inc., 180 F.3d 1277, 1285 (11th Cir.1999)).

Colonial argues removal was proper under § 1441(b)(2)'s plain language because no forum-defendant was "properly joined and served" before removal. There are many district courts, as well as the Third Circuit, that agree with Colonial and end the analysis there. See, e.g., Encompass Ins. Co., 902 F.3d at 152; Cheung v. Bristol-Myers Squibb Co., 282 F. Supp. 3d 638, 642 (S.D.N.Y. 2017). Further, the majority of courts that remanded snap removals did so on a legislative intent rational, agreeing that the literal application of the statutory language favors snap removals. See, e.g., Sullivan v. Novartis Pharms. Corp., 575 F.Supp.2d 640, 643 (D.N.J.2008).

The Court agrees. The plain language of the forum-defendant rule

14

prohibits removal on diversity grounds when a forum defendant is "properly joined and served," however, the Court does not "construe statutory phrases in isolation; [it] read[s] statutes as a whole." United States v. Morton, 467 U.S. 822, 828 (1984). "It is a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" Food & Drug Admin. v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133 (2000) (citation omitted). "A court must therefore interpret the statute 'as a symmetrical and coherent regulatory scheme,'...and 'fit, if possible, all parts into an harmonious whole.' " Id. Furthermore, "statutory language should not be applied literally if doing so would produce an absurd result" Miedema v. Maytag Corp., 450 F.3d 1322, 1326 (11th Cir.2006). As such, the Court will now address a series of reasons why snap removal creates an absurd result by cutting against the purpose of the form-defendant rule.

    B.    Absurd Result Exception and Legislative Intent

"The forum-defendant rule clearly contemplates Plaintiff's ability to defeat Defendants' purported right of removal in this case." Goodwin, 757 F.3d at 1221. Like in Goodwin, it is undisputed that if Colonial or Superior

15

had been served before Colonial removed this case, the forum-defendant rule would have barred removal. In fact, also like Goodwin, the Court dismissed Plaintiffs' first case without prejudice to allow them to accomplish this goal. The only reason this case is in federal court is that the same day the Court dismissed Plaintiffs' complaint, Colonial changed its registered agent from CSC to Northwest, without notifying Plaintiffs. As a result, Plaintiffs were unable to serve Colonial until over a month after filing their complaint in state court. Perhaps predictably, as soon as Plaintiffs's service to CSC failed, Defendants removed to federal court, before service.[4] Defendants' interpretation of § 1441(b)(2) would tie the Court's "hands in the face of such gamesmanship on the part of Defendants." Id. While the Court agrees with Colonial that service before removal is not always required,[5] snap removals

---

[4] The Court focuses on Colonial's service because they are the main snap removal player. Superior is also a forum defendant. Therefore, if Superior had been served before Colonial removed, the forum-defendant rule would have barred removal. In hindsight, perhaps Plaintiffs should have served Superior first. Plaintiffs, however, explain that they preferenced Colonial because of service issues with Superior during the first case. Regardless, Colonial removed and Superior joined in removal before Plaintiffs served Superior, but only by minutes.

[5] As recognized in Levine v. EverBank FSB, Civ. A. No. 1:17-CV-00826-SCJ-CMS, 2017 WL 4877110, at *2 (N.D. Ga. May 8, 2017), this issue has been "squarely addressed and resolved." With this in mind, the Court is no longer persuaded by the § 1441(a) "pending" argument addressed in Hawkins and

uniquely undermine the purpose of the forum-defendant rule and contravene the removal legal standard articulated above.

The purpose of the forum-defendant rule and Congress's intent in enacting the statute, as well as including the "properly joined and served" language, has been widely analyzed by district courts across the country. See Little, 251 F. Supp. 3d at 1221 (M.D. Tenn. 2017) (providing a calculated analysis of the issue and noting the forum-defendant rule's reinforcement of "the underlying reason behind the perceived need for diversity jurisdiction, to wit, protecting out-of-state defendants from homegrown, local juries."); Hawkins v. Cottrell, Inc., 785 F. Supp. 2d 1361, 1373 (N.D. Ga. 2011) (providing an in-depth analysis of Congress's intent on the issue).

This Court will follow the purpose first articulated in this Circuit in Hawkins and later honed in Goodwin and Wolfe; namely, that the forum-defendant rule was included in the removal statute to prevent gamesmanship by keeping "plaintiffs from blocking removal by joining a forum defendant against whom the plaintiff does not intend to proceed against." Wolfe, 8:14-CV-2448-T-24, 2014 WL 6470698, at *2 (M.D. Fla. Nov. 17, 2014)

---

argued by Plaintiffs. 785 F. Supp. 2d at 1371-2.

17

(citing Goodwin, 757 F. 3d. at 1221). The "properly joined and served" language further protects defendants from such gamesmanship. As the Middle District of Tennessee articulated:

> The inclusion of the "properly joined and served" language in § 1441(b)(2) also helps to insure that plaintiffs do not manufacture state court jurisdiction "by naming as a second defendant in the Complaint (i.e. 'joining') an in-state defendant that the plaintiff had no honest intention of pursuing in litigation, never intended to serve, and in fact did not serve with process.

Little, 251 F. Supp. 3d at 1222.

Thus, "[b]ecause the likely purpose of this language is to prevent gamesmanship by plaintiffs" the Court cannot accept that it is prevented from undoing Defendants' gamesmanship, especially under these circumstances. Goodwin, 757 F.3d at 1221. On the facts before the Court, gamesmanship is evidenced by Colonial's pre-service electronic monitoring of the docket and last-minute service change. The Court does not criticize Colonial for applying a now wide-spread litigation tactic. Rules will inherently empower sharp lawyers to find ways around them, and that is not inappropriate. Instead, this decision is meant to close an absurd loophole in the forum-defendant rule and to uphold the purpose and integrity of the rule. The fact that the very words

18

included to prevent gamesmanship have opened an avenue for more gamesmanship is an ironic absurdity that the Court will not enforce simply because the words "properly joined and served" appear unambiguous in isolation, and Congress has not provided more guidance on the issue.[6] A small step back from the phrase provides the explanation needed for the snap removal issue, which is further supported by traditional removal rules and standards.

Applying the removal standard, "removal statutes should be construed narrowly," Allen, 327 F.3d at 1293, and the removing party bears the burden of establishing federal jurisdiction. Friedman, 410 F.3d at 1353. At bottom, "uncertainties are resolved in favor of remand." Burns v. Windsor Ins. Co., 31 F.3d at 1095. The snap removal issue is uncertain, and the Court does not discount the arguments on the other side of the divide. That said, in the face of uncertainty, remand is appropriate. The plaintiff is the "master of her complaint." While Colonial found a possible avenue to take away Plaintiffs' power to decide the forum for this litigation, the Court cannot overlook the

---

[6] The Court notes Colonial's reliance on the 2011 amendments to § 1441 as evidence that Congress approves of snap removals. While the Court does recognize the effect the amendment had on the so called "third approach" to snap removals articulated in Hawkins, the Court is otherwise unpersuaded by this argument.

19

clear gamesmanship present in this case. Accordingly, Plaintiff's Emergency Motion for Remand [17] is **GRANTED** and the remaining motions, Plaintiff's Motion for Order to Release 911 Recordings [46] and Defendant Colonial Pipeline's Motion to Stay Discovery [56], are **DENIED** as moot.

## Conclusion

For the foregoing reasons, Plaintiffs' Plaintiff's Emergency Motion for Remand [17] is **GRANTED**. Further, Plaintiff's Motion for Order to Release 911 Recordings [46], Defendant Colonial Pipeline's Motion to Stay Discovery [56], and Colonial's Motion for Oral Argument [60] are **DENIED** as moot. The Clerk is **DIRECTED** to transmit a certified copy of this Order to the Clerk of the State Court for Fulton County, Georgia, such that this action may proceed in that forum.

**SO ORDERED**, this 21st day of December, 2018.

_____
**RICHARD W. STORY**
United States District Judge

20

AO 72A
(Rev.8/82)